80 So.2d 602 (1955)
SAX ENTERPRISES, Inc., Petitioner,
v.
HOTEL EMPLOYEES UNION LOCAL NO. 255 (A.F. of L.) and Albert H. Berlin, Clarence L. Smith and Henry Mischel, as Business Agents and Officers thereof, Respondents.
Supreme Court of Florida. Special Division A.
May 27, 1955.
Sibley & Davis, Miami Beach, and Weldon G. Starry, Tallahassee, for petitioner.
*603 Warren, Klein & Moore, Miami Beach, Gramling & Gramling, Miami, and J.W. Brown, Cincinnati, Ohio, for respondents.
HOBSON, Justice.
Petitioner is the owner of one of the popular hotels of Miami Beach, the Saxony. Respondents comprise Hotel Employees Union Local No. 255 (A.F. of L.), its business agents and officers. Petitioner filed a complaint wherein it prayed that respondents be enjoined from picketing its hotel on account of violence and that the picketing was done for an unlawful purpose. On application for temporary injunction, evidence was taken, at the conclusion of which temporary injunction was denied. As to the contentions that the picketing was for an unlawful purpose, the chancellor specifically recognized that to be the main issue in the case but refused to adjudicate it because no answer had been filed or issue made on that point. Said the chancellor, that point should be decided at final hearing after answer. His order was conditioned on expediting the cause on account of its effect on the parties. From this order, we are confronted with an appeal by certiorari.
The point for determination is whether or not the chancellor committed error in entering said order.
At the outset, it is pertinent to relate that while this case was heard in conjunction with similar cases against the Roney Plaza, the Monte Carlo, the Sans Souci, the Sherry Frontenac, the Sorrento and the Algiers Hotels, the order involved here applies only to the Saxony Hotel. We have examined the record carefully and we find insufficient showing to reverse the chancellor on the question of whether or not picketing the Saxony Hotel was accompanied by violence. His order was "without prejudice to reapply for an injunction on the grounds of excessive conduct or violence, if such appears to be justified by future acts" and warranted by the evidence.
Whether or not the picketing was being done for a lawful purpose presents a more difficult question. Petitioner contends that it was entitled to an injunction because its complaint was sworn to and not challenged by motion to dismiss, answer or affidavit denying the facts relied on. Anderson v. Tower Amusement Co., 118 Fla. 437, 159 So. 782; Kellerman v. Chase & Co., 101 Fla. 785, 135 So. 127; First National Bank of Gainesville v. Massey, 132 Fla. 113, 182 So. 187; Taylor v. Florida East Coast R. Co., 54 Fla. 635, 45 So. 574, 16 L.R.A.,N.S., 307; Seaboard Oil Company v. Donovan, 99 Fla. 1296, 128 So. 821; Treasure, Inc., v. Hotel & Restaurant Employees and Bartenders' Union, Fla. 1954, 72 So.2d 670, and Osceola Groves, Inc., v. Wiley, Fla. 1955, 78 So.2d 700, are offered to support this contention.
We must agree with petitioner's contention because in a situation such as is presented by the record in this case, when the point is raised, the chancellor is duty bound to determine on an application for a temporary restraining order whether the picketing was for a lawful purpose. The allegations of the sworn complaint together with the evidence introduced at the hearing upon the application for a temporary restraining order, at which hearing all parties hereto were represented, are sufficient under our opinion in Miami Typographical Union v. Ormerod, Fla. 1952, 61 So.2d 753, the cases cited therein, and Treasure, Inc., v. Hotel & Restaurant Employees and Bartenders' Union, supra, Fla., 72 So.2d 670, to establish the fact that the picketing which is being carried on was and is for an unlawful purpose.
Without doubt a labor organization has the right to engage in peaceful picketing of an employer's premises when predicated upon the refusal of the employer to recognize and negotiate with the union as the representative of such employer's employees. In order for such picketing to be lawful, the union must establish that the employees have chosen it as their representative, Treasure, Inc., v. Hotel & Restaurant Employees and Bartenders' Union, supra, and the labor organization must also inform the employer of the object to *604 be accomplished by the picketing and afford to the employer a fair opportunity to engage in negotiations. See North East Texas Motor Lines, Inc., v. Dickson, 148 Tex. 35, 219 S.W.2d 795.
With no evidence to the contrary, the chancellor had no alternative other than to accept as true the sworn allegations of the complaint. Pertinent among these allegations are the following:
"* * * the two organizers, one of whom is David Herman, and the other is one of the defendants, Albert H. Berlin, have utilized all the pressure tactics known to labor organizers to force and intimidate the employees of the plaintiff to become members of said labor organization. Their efforts in enlisting membership has been a distinct failure, so the said professionals determined to place pressure, intimidation and threats upon the hotel owners, in order to force said hotel owners through economic sanctions, to sign contracts with the said alleged organization, and thus use said contracts as a basis to force the employees of the hotels to become members of said alleged union.
"To this end, said David Herman contracted Sol Cohen, president of the Miami Beach Hotel Owners Association, and demanded that the said Cohen negotiate with and line up all of the owners of the first class ocean front hotels on Miami Beach, to execute labor contracts with the said alleged union, thus recognizing said union as representing the employees of the said hotels, and in this fashion, to enable the said union to procure membership among the employees of said hotels. Said Herman threatened Mr. Cohen by stating that unless the Hotel Association actively enlisted the hotel owners to join with the said union by giving it contracts as aforesaid, that the said David Herman would, through economic sanction such as picket lines around said hotels, cause them great economic loss, and thus force them, through such economic loss and pressure, to give to the said union contracts covering the employees in said hotels, who were not, in fact, members of or represented by the said alleged union in any fashion whatsoever. The Miami Beach Hotel Owners Association, and its president, has no power or authority to represent the owners of the individual hotels in reference to any labor matters involving the owners of any particular hotel."
"V
"The plaintiff has had no dealings whatever with any members of the Hotel Employees Union, Local No. 255 A.F. of L. Said union has never sought to negotiate with the plaintiff as the representative of plaintiff's employees; in fact, Local No. 255 does not represent the vast majority of the plaintiff's employees. No labor controversy or negotiations in reference to any labor dispute has ever been instituted, inaugurated, or carried on between the plaintiff and the said alleged union, and the said union has never sought to bargain with the plaintiff as the alleged representative of plaintiff's employees, and plaintiff alleges that the said union has never been authorized by the vast majority of its employees to represent them."
"VI.
"The plaintiff has never refused to recognize the defendant union, and has never refused to negotiate with said union; the plaintiff has never been requested by the said union to negotiate with it, and has never been advised by the said union that the union is the bargaining agent for plaintiff's employees, nor has the plaintiff been advised by said union that it is the labor organization representing plaintiff's employees. In truth and in fact, no demand or grievance of any nature whatsoever of the plaintiff's employees has, up to the present time, been made of or placed before the plaintiff, its officers or agents.
"Notwithstanding, said union at 6:00 o'clock in the morning on Wednesday, *605 April 13, 1955, placed a picket line consisting of six or more pickets in front of the plaintiff's place of business, and each of said pickets in said line carried a placard or poster which falsely and fraudulently alleged that the plaintiff had refused to negotiate with the defendant union. Each of said placards carried the following words:
"`This hotel refused to negotiate with Hotel Employees Union, Local #255, American Federation of Labor, 1575 Washington Avenue, Miami Beach'.
"Such representation made by said union is false and untrue, and the said union knows that the said statements are false and untrue. Said statements are made for the purpose of deceiving the public. The picket line was placed around the plaintiff's place of business for an unlawful and illegal purpose in that the defendant union is carrying out its threat to the president of the Miami Beach Hotel Owners Association by placing economic pressure on the plaintiff, thereby seeking to cause the plaintiff, by loss of revenue thus occasioned, to execute a labor contract with the said union." (Tr. 3, 4, 5, and top line on p. 6.)
Since, according to the allegations of the sworn complaint, the placards carried by the pickets contained false information, it cannot be said that they conveyed "information concerning the facts of a labor dispute". (Italics supplied.) It is therefore obvious that the purpose of the picketing is unlawful. As we said in the case of Miami Typographical Union No. 430 v. Ormerod, supra [61 So.2d 755]:
"When picketing is carried on to further an unlawful purpose, as was correctly determined in this case, it loses its characteristic of free speech which is guaranteed by the First Amendment to the Federal Constitution. It becomes, as was stated by Professor Gregory in his work on Labor and the Law, cited with approval by the U.S. Supreme Court in the case of Hughes v. Superior Court of State of Calif., 1950, 339 U.S. 460, 464, 465, 70 S.Ct. 718, 94 L.Ed. 985, `simply a species of coercion traveling under the guise of speech for the purpose of enjoying constitutional immunity * * *.'"
It is clear, therefore, that the real purpose of the picketing was to force the employees of the Saxony Hotel to designate the union or the individual respondents as their bargaining agent, and to coerce said hotel owners through economic sanctions to sign contracts with the union and to use said contracts as a basis to compel the employees of the hotels to become members of the respondent union.
Certiorari is granted as to that part of the chancellor's order which deferred a ruling upon the question whether or not the picketing was being carried on for an unlawful purpose, and the cause is remanded to the Circuit Court with directions to enter a temporary restraining order.
It is so ordered.
DREW, C.J., and TERRELL and SEBRING, JJ., concur.