Zimmerman, J.
There are thinking citizens in the United States who view with concern and misgiving the steadily growing centralization of powers in the federal government and its *563 agencies, and the alacrity with which those powers have been assumed and exercised. Noticeably, the several states are becoming less and less important in the over-all governmental scheme as they have either voluntarily or by compulsion relinquished prerogatives and transferred duties which were formerly theirs.
Existing conditions are reflected to an extent in the relationships between labor and management which are now controlled to an appreciable degree by the National Labor Relations Act (Section 141 et seq., Title 29, U. S. Code, as amended) and the interpretation of that act by the federal courts. In many conflicts between labor and management where interstate commerce is involved, as is the case here, the National Labor Relations Act asserts itself and is applied to the exclusion of interference by the state courts. This is so with respect to the “peaceful picketing” of an employer’s premises by labor unions and their members to force the employer to accede to the unions’ demands and to bring about the unionization of those who work for the employer.
The leading case relating to a situation of that kind is Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776, 346 U. S., 485, 98 L. Ed., 228, 74 S. Ct., 161, which is outlined and discussed at some length in Grimes & Hauer, Inc., v. Pollock, 163 Ohio St., 372, 127 N. E. (2d), 203 (certiorari denied, 350 U. S., 900, 100 L. Ed., 791, 76 S. Ct., 178).
On the basis of our interpretation of the holding in the Garner case, we said in the opinion in the Grimes & Hauer case:
“# * • qijje Qarner case * * * iayg down the rule that a state court does not possess the power to enjoin union conduct, such as the picketing of an interstate employer’s premises to induce the unionization of its employees, since such activity presents the question of an unfair labor practice within the meaning of the terms of the Labor Management Relations Act which, initially at least, is exclusive.”
As far as we can ascertain, the Supreme Court of the United States has rendered no later decisions with which the above-quoted language is in conflict.
One of the latest expressions, if not the latest, of the Supreme Court of the United States is found in the per curiam *564 opinion in Hotel Employees Union, Local No. 255, v. Sax Enterprises, Inc., — U. S., —, 3 L. Ed. (2d), 289, 79 S. Ct., 273, decided January 12, 1959. There the Supreme Court of Florida had affirmed the issuance of permanent injunctions against the nonviolent picketing of 12 Florida resort hotels for organizational purposes, which had for its objective the forcing of the employees of the hotels to designate the union or certain of its members as their bargaining agents and the coercing of the hotels through economic sanctions to sign contracts with the union, which contracts were to be used as a basis to compel the hotel employees to become members of the union. See Sax Enterprises, Inc., v. Hotel Employees Union, Local No. 255 (Fla.), 80 So. (2d), 602, 605.
In reversing the judgments of the Florida Supreme Court, the Supreme Court of the United States said:
“The Florida courts were without jurisdiction to enjoin this organizational picketing, whether it was activity protected by Section 7 of the National Labor Relations Act, as amended, 29 U. S. C., Section 157, Hill v. Florida, 325 U. S., 538, 89 L. Ed., 1782, 65 S. Ct., 137, or prohibited by Section 8(b) (4) of the act, 29 U. S. C., Section 158 (b) (4), Garner v. Teamsters, G. & H. Local Union, 346 U. S., 485, 98 L. Ed., 228, 74 S. Ct., 161. See Weber v. Anheuser-Busch, Inc., 348 U. S., 468, at 481, 99 L. Ed., 546, 558, 75 S. Ct., 480. This follows even though the National Labor Relations Board refused to take jurisdiction, Amalgamated Meat Cutters, etc., v. Fairlawn Meats, Inc., 353 U. S., 20, 1 L. Ed. (2d), 613, 77 S. Ct., 604, 609. The record does not disclose violence sufficient to give the state jurisdiction under United Auto. A. & A. I. Workers v. Wisconsin Employment Relations Board, 351 U. S., 266, 100 L. Ed., 1162, 76 S. Ct., 794.”
It would serve no useful purpose to carry this discussion further. Counsel for Richman have advanced a number of ingenious arguments in an attempt to plhce the instant case within the jurisdiction of Ohio courts, but in our opinion they have not succeeded.
Notwithstanding the writer’s dissenting opinions, the existing public policy of this state is established by the cases of Crosby v. Rath, 136 Ohio St., 352, 25 N. E. (2d), 934, and *565 Chucales v. Royalty, 164 Ohio St., 214, 129 N. E. (2d), 823, and is against “stranger picketing” of the kind practiced in the instant case.
The following question may arise in the minds of many: Where, as here, an employer and his employees are perfectly satisfied with existing working conditions and desire no relations with any labor union, why should they have to submit to harassment and persecution in Ohio by outsiders insisting on unwanted unionization and be precluded from restorting to Ohio courts for relief? As previously indicated, the answer is found in the decisions of the United States Supreme Court, which relegate a complaining employer engaged in interstate commerce to the National Labor Relations Board where response is uncertain, problematical and often long delayed.
In view of the sweeping decisions of the Supreme Court of the United States applying the National Labor Relations Act in a variety of circumstances, including those similar to the one existing here, we can discover no other alternative than to affirm the judgment of the Court of Appeals herein. If we are wrong in our conclusion, the Supreme Court of the United States, as our superior in a matter of this kind, may be afforded the opportunity of telling us so.

Judgment affirmed.

Stewart, Taft and Matthias, JJ., concur.
Weygandt, C. J., Bell and Herbert, JJ., dissent.